UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

DOUGLAS COHEN,

                                       Plaintiff,

-against-

CITY OF NEW YORK, SERGEANT WINSTON WILLABUS, POLICE OFFICER MICHAEL FODOR, POLICE OFFICER CHRISTOPHER W. DONAHUE, POLICE OFFICER JONMICHEL LOBOSCO, POLICE OFFICER OMAR GALINDO,

                                       Defendants.

FIRST AMENDED COMPLAINT AND JURY DEMAND

Docket No. 13-cv-05701-FB-JO

ECF CASE

------------------------------------------------------------------- x

      Plaintiff Douglas Cohen by his attorney Cynthia H. Conti-Cook, of Stoll, Glickman & Bellina, LLP, for his complaint against defendant New York Police Department officers, alleges as follows:

PRELIMINARY STATEMENT

      1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and Fourteenth Amendments, in addition to violations of the laws and Constitution of the State of New York.

      2.    On December 15, 2011 NYPD officers assaulted Mr. Cohen while he was in a prone position on the ground and again after he was in handcuffs.

      3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. SERGEANT WINSTON WILLABUS was, at all times here relevant, a police

2

officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Willabus was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Willabus was under the command of the 70th precinct on the date of the incident. While an officer at the 70th precinct, Willabus supervisors failed to train, supervise, discipline and control Willabus. On information and belief, at all times relevant hereto, Defendant Willabus was under the command of the 70th precinct and is sued in his individual capacity.

11. POLICE OFFICER MICHAEL FODOR, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Foder was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Foder was under the command of the 70th precinct on the date of the incident. While an officer at the 70th precinct, Foder supervisors failed to train, supervise, discipline and control Foder. On information and belief, at all times relevant hereto, Defendant Foder was under the command of the 70th precinct and is sued in his individual capacity.

12. POLICE OFFICER CHRISTOPHER W. DONAHUE, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times

relevant hereto, Defendant Donahue was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Donahue was under the command of the 70th precinct on the date of the incident. While an officer at the 70th precinct, Donahue supervisors failed to train, supervise, discipline and control Donahue. On information and belief, at all times relevant hereto, Defendant Donahue was under the command of the 70th precinct and is sued in his individual capacity.

13. POLICE OFFICER JONMICHEL LOBOSCO, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Lobosco was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Lobosco was under the command of the 70th precinct on the date of the incident. While an officer at the 70th precinct, Lobosco supervisors failed to train, supervise, discipline and control Lobosco. On information and belief, at all times relevant hereto, Defendant Lobosco was under the command of the 70th precinct and is sued in his individual capacity.

14. POLICE OFFICER OMAR GALINDO was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Galindo was involved in the decision to arrest plaintiff without

probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Galindo was under the command of the 70th precinct on the date of the incident. While an officer at the 70th precinct, Galindo supervisors failed to train, supervise, discipline and control Galindo. On information and belief, at all times relevant hereto, Defendant Galindo was under the command of the 70th precinct and is sued in his individual capacity.

15.  At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

16.  Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL CHARGES

17.  On December 15, 2011, Mr. Cohen was confronted by two men outside of a store after buying a cigar to use for smoking marijuana he had just bought.

18.  The men were wearing normal clothing and did not appear to be police officers. They told Mr. Cohen they knew what he had and that he better cooperate. Mr. Cohen believed they were trying to rob him and he ran for about 200 yards until he hid under a van.

19.  After hiding under a van for a few minutes, police officers in uniform pointed a

5

gun at him and told him to get out from underneath the van. Mr. Cohen slid out from the van and laid down facing the ground with his arms extended above his head, as instructed, and stayed still.

20. Soon he heard footsteps running towards him from behind while he was face down and 4-6 officers surrounded him and started kicking, punching, and beating him. He was kicked in the face and his head was held down on the pavement while officers kneeled into his back and held him down.

21. After he was handcuffed, an officer he believes was Michael Fodor picked him up and slammed him against the van, using his forearm to choke him.

22. Mr. Cohen went to a hospital while in custody with injuries including swelling and bruising to his eyes, face and jaw.

23. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

24. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

25. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

a.  Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

b.  Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.  Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.  Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e.  Physical pain and suffering;

f.  Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.  Loss of liberty;

h.  Attorney's and court fees; and

i.  Lost wages.

FIRST CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

26. The above paragraphs are here incorporated by reference.

27. By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

7

28. In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

29. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

30. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

31. The above paragraphs are here incorporated by reference.

**THE CITY OF NEW YORK AND NYPD FAIL TO SCRUTINIZE OFFICERS, UNITS AND PRECINCTS WITH HISTORIES OF MULTIPLE LAWSUITS FOR CIVIL RIGHTS VIOLATIONS**

32. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts.

33. The number of claims against the department doubled over the past decade to a record high of 9,570 filed in 2012. The suits cost taxpayers more than $1 billion dollars during that time period.[1]

34. In 2010, New York City paid out $136 million[2] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[3] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[4] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

35. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost

---

[1] New York Daily News, EXCLUSIVE: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006 (SEE INTERACTIVE GRAPHIC), February 18, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE.

2 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[3] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[4] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

9

axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

36. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.

37. Former Comptroller John Liu described the City of New York having a "see no evil, hear no evil' attitude," "whose repeated calls for analyzing lawsuits were ignored". See FN1, above.

## DEFENDANTS' PRIOR LAWSUIT HISTORY

38. Defendant Michael Foder has a history of civil rights lawsuits. See *Paul v. City of New York et al*, 12-cv-00250-NGG-RER; *St. Fleur v. City of New York et al*, 11-cv-02168-SLT-JO; *Beckford v. The City of New York et al*, 12-cv-01636-NGG-RER. Sergeant Winston Willabus also has a history of civil rights violations. See *Abrahams v. City of New York et al*, 12-cv-02911-ARR-VVP. Defendant Jonmichel Lobosco also has a history of civil rights lawsuits, including *Joseph Donald, et al v. City of New York, et al*, 10-cv-04052-ARR-RLM, *Mark Simpson v. City of New York, et al*, 08-CV- 08-cv-03801-CVS-VVP, *Theodore Sannon, et al v. City of New York, et al*, 09-CV-3178-CBA-JO, and *John McClean v. City of New York, et al*, 10-CV-0631-FB-RLM.

39. The 70th precinct also has a history of civil rights violations, including the infamous assault on Abner Louima in 1997. In March 2013, one of the officers, Jovaniel

10

Cordova, who shot Kimani Gray in the 67th precinct had two lawsuits from when he worked at the 70th precinct in 2011 and 2012. See *Morency v. City of New York et al*, 12-cv-03516-BMC and *Owusu v. City of New York et al*, 1:11-cv-05865-SLT-VVP.

40. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

41. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

42. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared

to $80 million in 2008.[5] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[6]

43. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

44. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the

---

[5] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[6] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

12

kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

45. Defendants here have perjured, assaulted and falsely imprisoned plaintiff. Despite the fact that their perjury was proven through the criminal litigation, the Brooklyn District Attorney's office failed to bring perjury charges against them.

46. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

47. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:     April 1, 2014
           Brooklyn, New York

TO:

Attorney for Defendants
Corporation Counsel Carla Cheung
100 Church Street
New York, NY 10007

Police Officer Jonmichael Lobosco

Police Officer Omar Galindo

Respectfully yours,

*[signature]*

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com